IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MELANIE L.,                              :
                                         :
              Plaintiff,                 :
                                         :
       v.                                :    Case No. 2:25-cv-381
                                         :    Judge Edmund A. Sargus, Jr.
                                         :    Magistrate Judge S. Courter M. Shimeall
COMMISSIONER OF                          :
SOCIAL SECURITY,                         :
                                         :
              Defendant.                 :

## REPORT AND RECOMMENDATION

Plaintiff, Melanie L., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").  This matter is before the Court for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 12), Plaintiff's Reply (ECF No. 13), and the administrative record (*see generally* ECF No. 7 and its subparts).  The Undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the administrative law judge ("ALJ") under Sentence Four of § 405(g).

## I.     BACKGROUND

Plaintiff filed her applications for DIB and SSI on April 27, 2022, alleging disability since January 1, 2022, due to two strokes, transient ischemic attack (TIA), carotid artery dissection,

spinal stenosis, herniated discs, anxiety, irritable bowel syndrome, degenerative disc disease, arthritis, and asthma.  (ECF No. 7-6 at PAGEID #: 398.)  Plaintiff's applications were denied initially and upon reconsideration.  (ECF No. 7-3 at PAGEID ##: 185–86, 207–08.)  Plaintiff, through counsel, requested and was granted a *de novo* hearing before an administrative law judge (the "ALJ").  Plaintiff, and a vocational expert ("VE"), appeared and testified at the hearing on January 12, 2024.  (ECF No. 7-2 at PAGEID ##: 131–59.)

On February 14, 2024, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.* at PAGEID ##: 105–30.)  The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2027, and then applied the five-step sequential process to evaluate her applications.[1]  (*See, e.g.*, *id.* at PAGEID #: 110.)

- Step One: The ALJ found that Plaintiff has not engaged in substantial gainful activity since January 1, 2022, the alleged onset date.  (*Id.*)

- Step Two: The ALJ found that Plaintiff has the following severe impairments: cerebral vascular accidents (CVA)/infarctions/traumatic brain injury, headaches, fibromyalgia, degenerative disc disease, carotid artery dissection, osteoarthritis, obesity, hypertension, visual disturbance, asthma, right rotator

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4); 416.920(a).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); 416.920(a); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009).

cuff tendinitis, and affective and anxiety-related disorders. (*Id.* at PAGEID ##: 110–11.)

- Step Three: The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at PAGEID #: 111.)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity

("RFC"):

> The claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs but never climb ladders, ropes o[r] scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She can frequently overhead reach with the right upper extremity and frequently handle bilaterally. She must avoid exposure to atmospheric conditions, such as fumes, odors, dusts, gases, and poor ventilation. She must avoid hazards, such as unprotected heights, dangerous machinery, and commercial driving. She must avoid work that requires peripheral vision on the right side and work that requires precise depth perception. She can understand, remember, and carry out simple instructions but cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas. She can deal with occasional changes in a routine work setting.

(*Id.* at PAGEID #: 115.)

- Step Four: The ALJ determined that Plaintiff is unable to perform her past relevant work as a paramedic based on the VE testimony. (*Id.* at PAGEID #: 123.)
- Step Five: The ALJ concluded that—when considering her age, education, work experience, and RFC—there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as a routing clerk, cashier, or sales attendant. (*Id.* at PAGEID #: 124.)

The ALJ therefore concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since January 1, 2022. (*Id.* at PAGEID #: 125.)  The Appeals Council denied Plaintiff's request for review on February 4, 2025. (*Id.* at PAGEID #: 32.)  This appeal followed.

3

## II.    RELEVANT RECORD EVIDENCE

The Undersigned has reviewed the underlying record, including portions of the administrative record relevant to Plaintiff's claimed errors. Rather than summarizing that information here, the Undersigned will refer and cite to it as necessary in the discussion of the parties' arguments below.

## III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of*

*Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices [Plaintiff] on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV.    ANALYSIS

Plaintiff asserts one statement of error, which pertains to the ALJ's treatment of the opinion of Irma Johnston, one of the State Agency psychologists who reviewed Plaintiff's medical records and weighed in on Plaintiff's work-related limitations.  Plaintiff contends the ALJ failed to adequately articulate her assessment of the supportability and consistency factors when evaluating Dr. Johnston's opinion.  For the reasons that follow, the Undersigned finds Plaintiff's contention regarding supportability well-taken.[2]

"The supportability factor recognizes that '[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be.'" *Kati M. v. Comm'r of Soc. Sec. Admin.*, No. 2:23-CV-04128, 2025 WL 444046, at *7 (S.D. Ohio Feb. 10, 2025) (quoting 20 C.F.R. § 416.920c(c)(1)), *report and recommendation adopted*, 2025 WL 1640556 (S.D. Ohio Feb. 26, 2025).  An ALJ's supportability analysis must address "whether a medical professional has sufficient justification for their *own* conclusions."  *Id.* (citing *Crystal E. J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022)).

---

[2] This finding obviates the need for in-depth analysis of Plaintiff's consistency argument, though the ALJ may nevertheless consider it on remand.

When addressing supportability of a medical provider's opinions, the ALJ should take into account how much the medical conclusions are supported by that medical provider's records, "including progress notes, test results, statements from the claimant, and opinions from other medical providers."  *See Kati M.*, 2025 WL 444046, at *8; 20 C.F.R. § 404.1520c(c)(1); 416.920c(c)(1).  Finally, "[a]lthough the ALJ is not required to use the 'magic words' of 'supportability' and 'consistency' when describing their reasoning, the ALJ must still provide sufficient reasoning, scaffolded with references in the medical record to support their decision, enough for a subsequent reviewer to trace the lines of their reasoning." *Mertle v. Comm'r of Soc. Sec.*, No. 3:24-CV-00832-JJH, 2024 WL 5160189, at *8 (N.D. Ohio Dec. 19, 2024).

Here, Dr. Johnston concluded that Plaintiff could "adapt and manage herself in a structured and predictable work setting, where changes are infrequent and can be explained."  (ECF No. 7-3 at PAGEID #: 170.)  The ALJ noted Dr. Johnston's opinion, but concluded that it was not persuasive, because, according to the ALJ, Dr. Johnston relied on an incomplete record for support. (ECF No. 7-2 at PAGEID #: 122.)  The ALJ went on to note that

> the updated record as summarized above, documents that stress does aggravate the claimant's symptomatology and that she has had some, albeit infrequent and relatively minor, memory and/or cognitive residuals associated with her stroke history. The record does not support the additional need for a structured and predictable work setting or changes that can be explained within the context of the above mental RFC, which does provide for a limitation to simple instructions, no specific production rate, no hourly quotas, and only occasional changes in a routine work setting. Further limitations would be inconsistent with the above-noted generally normal mental status exam findings.

(*Id.* at PAGEID ##: 122–23.)  Taking a step back, Plaintiff contends that the ALJ's faulty evaluation of Dr. Johnston materially and adversely affected the ALJ's RFC finding.  As Plaintiff

points out, Dr. Johnston opined that Plaintiff "could adapt and manage herself in a structured and predictable work setting, where changes were infrequent and could be explained"—an opinion, as Plaintiff explains it, that would lend itself to a correspondingly limited RFC.  But the ALJ found this opinion unpersuasive and did not include any limitation in the RFC that fully aligned with Dr. Johnston's opinion.

As Plaintiff correctly points out, the ALJ's explanation is insufficient in several ways.

"ALJs must provide a 'minimum level of articulation . . . to provide sufficient rationale for a reviewing adjudicator or court.'" *Farrah W. v. Comm'r of Soc. Sec.*, No. 3:22-cv-374, 2024 WL 514496, at *8 (S.D. Ohio Feb. 9, 2024) (citation omitted).  This analysis does not "require those explanations to contain a specific level of detail, but instead contemplate[s] that the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (internal quotations omitted).  However, "it is the obligation of the ALJ 'in the first instance to show his or her work, *i.e.*, to explain in detail *how the factors actually were applied* in each case, to each medical source.'" *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-cv-129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021)).

The ALJ's explanation falls short of this standard.  First, the only discussion of support is the ALJ's comment that Dr. Johnston's opinion was not persuasive because, according to the ALJ, Dr. Johnston relied on an incomplete record for support.  In other words, the ALJ discounted Dr. Johnston's opinion because it was not supported by the whole record.  "But fundamentally, this

conflates consistency with supportability. Said differently, the ALJ discussed the consistency factor by comparing [Dr. Johnston's] opinion with the record as a whole." *Melinda D. v. Comm'r of Soc. Sec.*, No. 2:24-CV-3871, 2025 WL 227159, at *6 (S.D. Ohio Jan. 17, 2025). The ALJ did not discuss supportability by referencing any explanations or evidence underlying Dr. Johnston's opinion, and this omission constitutes error. *See, e.g.*, *William G. v. Comm'r of Soc. Sec.*, No. 2:22-cv-213, 2022 WL 4151381, at *8 (S.D. Ohio Sept. 13, 2022) (finding the ALJ did not properly analyze supportability where his comments merely compared the medical source's opinion with the record as a whole), *report and recommendation adopted*, No. 2:22-cv-213, 2022 WL 16745337 (S.D. Ohio Nov. 7, 2022); *Crystal E.J.*, 2022 WL 2680069, at *7–8 (stating comparisons to the record as a whole go only to the consistency of an opinion, not supportability).

Second, the ALJ did not build a logical bridge between the evidence and her decision to discount Dr. Johnston's opinion. As the ALJ explained, Dr. Johnston opined that Plaintiff needed a structured and predictable work setting with infrequent changes. The ALJ then discounted this opinion, explaining that "the updated record . . . documents that stress does aggravate the claimant's symptomology and that she has had some, albeit infrequently and relatively minor, memory and/or cognitive residuals associated with her stroke history." (*See* ECF No. 7-2 at PAGEID #: 122.) But the ALJ fails to explain why these stress-related symptoms and memory issues undermine, rather than reinforce, Dr. Johnston's proposed limitations. Moreover, it is not apparent to the Court that the records the ALJ cites—documenting Plaintiff's stress-aggravated symptoms and memory issues—are inconsistent with a limitation to a structured and predictable work setting with infrequent changes. The lack of clarity is compounded by the fact that the ALJ

8

failed to discuss any explanations or evidence underlying Dr. Johnston's opinion such that the Court could make logical inferences about how the ALJ determined that Dr. Johnston's opined restrictions were not required.

The ALJ was ultimately required to show her work. *See Scott K.*, 2022 WL 4484603, at *4. She didn't do so here, as explained, and "[w]ithout an articulation of whether the ALJ considered these . . . limitations to be supported or not, the Court cannot trace the ALJ's path of reasoning." *Amanda B. v. Comm'r of Soc. Sec. Admin.*, No. 2:22-CV-4209, 2024 WL 278160, at *4 (S.D. Ohio Jan. 25, 2024); *see also Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) ("[T]he ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning." (internal quotation marks and citation omitted)). As it stands, the Undersigned cannot trace the ALJ's reasoning. In other words, the ALJ has not built "an accurate and logical bridge between the evidence and [her] conclusion." *Davis v. Comm'r of Soc. Sec.*, No. 2:19-CV-265, 2019 WL 5853389, at *5 (S.D. Ohio Nov. 8, 2019), *report and recommendation adopted*, No. 2:19-CV-265, 2020 WL 1482318 (S.D. Ohio Mar. 27, 2020).

The Commissioner resists this conclusion, principally by contending that the ALJ is allowed to cite to a prior discussion of the record in lieu of a subsequent explanation of the record when evaluating supportability. (*See, e.g.*, ECF No. 12 at PAGEID #: 2645 (citing *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) for the proposition that an ALJ need not repeat a prior discussion of the medical record when articulating inconsistent medical opinions).) Even assuming that proposition is correct, it is inapplicable to this case, where the ALJ gave a broad citation to a prior discussion, provided no further substantive explanation that would

9

allow a reviewing court to follow a logical bridge to the ALJ's conclusion, and relied on reasoning that appears inconsistent with that conclusion. "The regulations still require an ALJ to 'provide a coherent explanation of [her] reasoning.'" *Samantha B. v. Comm'r of Soc. Sec.*, No. 2:25-CV-00266, 2025 WL 3687411, at \*6 (S.D. Ohio Dec. 19, 2025) (quoting *Kimberly S. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-310, 2022 WL 17820565 (S.D. Ohio Dec. 20, 2022)), *report and recommendation adopted*, No. 2:25-CV-266, 2026 WL 87700 (S.D. Ohio Jan. 12, 2026). The ALJ's discussion of Dr. Johnston's opinion does not meet this low bar.

What's more, this error is not harmless. The ALJ's "failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)). Because the ALJ's supportability analysis does not build a logical bridge between the evidence and her conclusion, the Undersigned recommends remand.

## V. CONCLUSION

For these reasons, it is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** under Sentence Four of § 405(g).

## VI. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response

to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).

**IT IS SO ORDERED.**

*/s/ S. Courter M. Shimeall*
**S. COURTER M. SHIMEALL**
**UNITED STATES MAGISTRATE JUDGE**

11